IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

**UNITED STATES OF AMERICA**

v.                                                            CASE NO. 1:21-cr-00006 AW-MAL

**MOHAMED FATHY SULIMAN**
_____/

**RESPONSE TO DEFENDANT'S MOTION FOR PERMISSION
TO TRAVEL TO SAUDIA ARABIA**

COMES NOW, the United States of America through the United States Attorney, Northern District of Florida, John P. Heekin, and Christie S. Utt, Assistant United States Attorney, and objects to the defendant's motion to travel to Saudi Arabia.

On September 11, 2020, a criminal complaint was filed, alleging that the defendant violated 18 U.S.C. § 2339B, Attempt to Provide Material Support to a Designated Foreign Terrorist Organization.  *See* ECF Doc. # 2 and 176.  Nearly 18 months later, on February 1, 2021, the defendant appeared in federal court in Gainesville for the initial appearance on the complaint.  *See* ECF Doc. # 176 at pg 3.  On February 23, 2021, the Federal Grand Jury returned an indictment to the same charge.  On October 26, 2021, the defendant was found incompetent to proceed and was remanded to custody for hospitalization and treatment.  *Id*.  On

September 2, 2022, the defendant was found competent to proceed. *Id.* The defendant entered a plea on April 25, 2023, and sentencing was held on October 20, 2023. *See* ECF Doc. # 192.

The defendant was sentenced to 36 months of imprisonment and a lifetime of supervised release. *Id.* Standard condition number three of supervision includes that "You must not knowingly leave the federal judicial district where you are authorized to reside without first getting permission from the court or a probation officer." *Id.* at pg 4. An additional term imposed requires the defendant "to continue to take medications as prescribed and comply with any current mental health treatment plan as directed." *Id.* at pg 5. On January 18, 2024, the defendant's supervised release was transferred to Virginia, where he is being supervised by United States Probation Officer Specialist Franklin Weaver.

Interestingly, the defendant asserts that "the conditions of probation[1]… do not prohibit overseas travel" (ECF Doc. # 192 at pg 4) even though in his sentencing memorandum, he specifically advocated for "restrictions on travel" in lieu of a longer period of incarceration. ECF Doc. # 179 at pg 18. Clearly, foreign travel was contemplated as Footnote 5 provides: "In addition to court-imposed travel restrictions including the surrender of Mr. Suliman's passport, it seems

---

[1] While defendant makes reference to probation, the defendant is on a lifetime term of supervised release (ECF Doc. # 193 at pg 3).

apparent that the United States Government has placed Mr. Suliman on its no-fly list, which further restricts his ability to travel internationally." *Id*.

Also of concern is that the defendant fails to make reference to the foreign travel that is the basis for the federal charge he pled guilty to, and eerily similar to his itinerary when he flew to Egypt (under the guise of visiting a sick family member) yet deviated in Turkey in an attempt to enter Syria.  He also fails to address that he has been deported from at least one foreign country and that on two other separate occasions, his father had to "extract" him from a foreign country based on his apparent wrongful attempt/purpose to enter the foreign country.  *See* ECF Doc. # 176.

The record documents that the defendant initially became involved with or attempted to become involved with a foreign terrorist group that was in the infancy of development.  The defendant became involved with al-Shabaab in 2006 when it was "a rising inside of Somalia and taking over the southern portion of the country" and entered Somalia to meet with "Abdullah."  ECF Doc. # 176 at pg 5.  Records indicate al-Shabaab was designated in 2009 as a foreign terrorist organization.  *Id*. at pg 5.  Then, again, in 2009, the defendant traveled again to Somalia, where he was questioned about joining al-Shabaab and prevented from entering the country.  Both times the defendant's father intervened such that the defendant was returned to Egypt, yet another foreign country.  *Id*.

The defendant has a pattern of being dishonest about his travel and activities related to his reasons for the travel. When questioned in 2011 about his internet/email activity, the defendant fabricated a story that "Sideeq" was using his credentials to communicate about participation with jihad (and mental illness) and visiting jihadist sites. *Id*. at 5-6. The defendant further engaged in a very sophisticated plan, taking evasive steps to prevent disclosure of the real reason he was attempting to enter Syria in 2014. He further admitted he used deceptive means in his attempt to enter Syria to provide support to ISIS. ECF Doc. # 2 at pg 8. According to the complaint, when the defendant was interviewed in 2016, he still was not honest about his 2014 attempt to join ISIS. ECF Doc. # 2 at pg 4. For example, he claimed he wanted to meet with members of "Jabhah Shamiyah," which was a rebel group that was not formed until after the defendant's attempt to illegally enter Syria, and he claimed he stayed in the hotel in Gaziantep, when in fact records show that he was arrested the day he his flight landed in Gaziantep. *Id*. at pg 8. Thus, from the documents in the record, the defendant has been attempting to be involved with multiple known terrorist groups and has been dishonest about it from 2006 to 2018. During his presentence interview, the defendant agreed to the "statement of facts," but declined to comment further on the offense. ECF Doc. # 176 at pg 7.

More concerning is that the defendant uses a story about family members to

explain his travel. In 2011, he claimed he wanted to bring his fiancée to the United States with him. *Id*. In 2014, the defendant "advised that he was going to visit his sick father and half-siblings in Egypt…." *Id*. However, this was not true—he was going to join ISIS. The defendant even told a person in Turkey that he wanted to go to Syria "to get to family members." ECF Doc. # 2 at pg 7. When the defendant returned back to the United States in 2007, it was to live with his mother and sister. *Id*. at pg 5. The defendant is also known to engage in such travel without being honest with family members. *See* ECF Doc. # 2 at pg 6 (family members learned he was in Turkey and could not believe he would leave his wife and mother). In fact, when the defendant attempted the second time to enter Somalia to join/support the al-Shabaab, the defendant's mother and sister had traveled with him from the United States to Sudan. ECF Doc. #176 at 10.

It appears from the record that the defendant asserts that his mental health condition is the reason he attempts to join or be associated with foreign terrorist groups. Irrespective of whether this condition "causes" him to engage in this behavior, it is concerning that he has been hospitalized in a number of countries, including India, where a doctor stated the defendant was "difficult to control." ECF Doc. # 176 at pg 11. Once the defendant is out of the United States, there will be no way to make sure that the defendant is not again attempting to join/support a foreign terrorist group or simply to just evade being present in the United States.

5

The defendant's extensive foreign travel establishes that he can easily travel to and from foreign countries, even living for extended periods of time in foreign countries. There is no guarantee that the defendant will return to the United States. Given that the defendant has a lifetime term of supervision, a potential motive to escape such supervision is to remain abroad. In reality, there is no way to monitor the defendant's conduct in a foreign country.

The defendant requests to travel to Saudi Arabia to visit with his daughter and to obtain a passport. ECF Doc. # 195 at pg 3. The defendant does not explain why he must go to Saudia Arabia for his child to obtain a passport. Moreover, he does not explain the purpose of obtaining this passport. Records indicate that the defendant married his daughter's mother, a citizen of Sudan, in the United States in 2013, the child was born in 2017 in Sudan, and they divorced in 2018. In 2023, the defendant said that he had not seen his child for four years. *Id*. The child and her mother apparently live in Saudi Arabia even though the mother is a citizen of Sudan. ECF Doc. # 195 at pg 3. The defendant had remained out of the United States since 2014, until he was arrested in this case in early 2021. Since 2018, the defendant had been in India. *Id*. at pg 10.

Facts surrounding this case are concerning given the multiple times that the defendant attempted to be engaged with terrorist organizations. While the Terrorism Enhancement pursuant to 18 U.S.C. § 3553(a) was not applied, the facts

6

do support steps on multiple occasions to join or assist groups whose goals were/are to "influence or affect the conduct of government." 18 U.S.C. § 3553(a).

While it is appreciated that the defendant will provide "proof of round-trip tickets of his travel and hotel reservations in Saudia Arabia for both himself and his mother," this condition does not prevent the defendant from going to another country once he is outside the United States. ECF Doc. #195 at pg 4. That is exactly what he did when he committed the underlying offense. There is no condition at this juncture that can prevent this absent not allowing the defendant to travel to a foreign country.

In addition, while the defendant asserts that Probation Officer "Weaver indicates that his primary concern with any travel is that Mr. Suliman continue to take his medication as prescribed during travel," the presence of the defendant's mother does not mitigate this concern because the defendant was actually with his mother and sister in Sudan when he said "he stopped taking his medication" and left them to attempt an improper entry into Somalia via Dubai (yet another foreign country) in 2009. ECF Doc. # 2 at pg 4. The defendant's claim that his mother "intends" to travel with and ensure that he remains "faithful to his medical regime" [sic] does not ensure that he will, which is concerning given his entire justification for his criminal action is because he has a mental health condition and was by choice not taking his medication. ECF Doc. # 195 pg 3. The combined

reoccurrence of traveling to a foreign country—where he could easily access known foreign terrorist groups--and failing to take his medication is not out of the realm given the defendant's history, and there would be no recourse once he is out of the United States.  Clearly, Probation Officer Weaver's concern is valid given that the record provides that "the defendant has a history of not taking his medication." ECF Doc. # 176 at pg 11.  In the United States the defendant cannot physically enter a foreign country, whether he is compliant with his medical regimen or not.

WHEREFORE, for the foregoing reasons, the government objects to the defendant traveling to Saudia Arabia merely two years after he pled guilty to attempting to provide material support to a designated foreign terrorist organization where:

1. He attempted to enter Syria to provide support to ISIS;

2. he previously twice attempted to enter another country to support another growing/established terrorist group;

3. he previously justified his travel by claiming to visit various family members;

4. he engaged in a deceptive detailed plan to evade his family and detection in support of his third attempt to enter a foreign country to support ISIS, a clearly known terrorist organizations adverse to the interests of the United States;

5.	he was accompanied by his mother and sister on at least one of the foreign trips when he attempted to enter a foreign country to support a terrorist group;

6.	he has spent substantial time traveling and living in foreign countries, including being medically committed therein;

7.	he does not have an established record of being compliant with his medical regimen; and

8.	there is no condition that will ensure that the defendant will be compliant with his medical regimen and return to the United States to continue his lifetime of supervision.

Respectfully submitted,

JOHN P. HEEKIN
United States Attorney

*s/ Christie S. Utt*
CHRISTIE S. UTT
Assistant U.S. Attorney
Florida Bar # 84759
401 SE First Ave, Ste 211
Gainesville, Florida 32601
Telephone: (352) 378-0996
Email: Christie.Utt@usdoj.gov

## CERTIFICATE OF COMPLIANCE

I DO HEREBY CERTIFY that this response complies with Local Rule 7.1(F) U.S. District Court for N.D.FL. This motion contains 2068 words.

*s/ Christie S. Utt*
CHRISTIE S. UTT
Assistant U.S. Attorney

## CERTIFICATE OF SERVICE

I DO HEREBY CERTIFY I hereby certify that a true and correct copy of the foregoing has been filed via the Court's CM/ECF system and that a copy of the foregoing has been mailed to Mohamed Fathy Suliman at 1817 N Quinn Street, #303, Arlington, Virginia 22209.

*s/ Christie S. Utt*
CHRISTIE S. UTT
Assistant U.S. Attorney